374 A.2d 1372

**Edna TOBIAS, Appellant,**

v.

**Claire TOBIAS, Sr., Appellee.**

Superior Court of Pennsylvania.

Argued March 19, 1976.

Decided June 29, 1977.

170

Joseph A. Campagna, Jr., Sunbury, for appellant.

Charles E. Duncan, Jr., Shamokin, submitted a brief, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

SPAETH, Judge:

This is an appeal by a mother from an order awarding custody of a now ten year old boy, Claire, Jr., to his father.

-1-

The mother first contends that the "tender years presumption" should control the disposition of this case. This contention ignores the well-settled principle that the

paramount concern in a custody dispute between parents is the best interest of the child. *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 107–8, 296 A.2d 625, 627 (1972); *Cochran Appeal,* 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Graham v. Graham,* 367 Pa. 553, 80 A.2d 829 (1951); *Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 312 A.2d 58 (1973). To determine what is the child's best interest, the hearing judge must concentrate upon the particular facts of the particular case. Decision by presumption can only interfere with that process. *Commonwealth ex rel. Spriggs v. Carson,* 470 Pa. 290, 368 A.2d 635 (1977) (plurality opinion); *Commonwealth ex rel. Cutler v. Cutler,* 246 Pa.Super. 82, 369 A.2d 821 (1977); *Commonwealth ex rel. Lee v. Lee,* 248 Pa.Super. 155, 374 A.2d 1365 (1977). *See Commonwealth ex rel. Veihdeffer v. Veihdeffer,* 235 Pa.Super. 447, 344 A.2d 613 (1975); *Commonwealth ex rel. Grillo v. Shuster, supra.*[1] Accordingly, the "tender years presumption" is at most merely a procedural device for allocating the burden of proof. Only where a hearing judge determines, after a full hearing, that a child's best interest would be equally served by living with either parent, should a child of "tender years" be placed in the mother's custody. *Commonwealth ex rel. Veihdeffer v. Veihdeffer, supra; Commonwealth ex rel. Grillo v. Shuster, supra.* Here the hearing judge concluded that Claire, Jr.'s, best interest would be served by placing him in his father's custody; the judge therefore properly subordinated the presumption to this finding. *See In re Russo,* 237 Pa.Super. 80, 346 A.2d 355 (1975); *Carlisle Appeal,* 225 Pa.Super. 181, 310 A.2d 280 (1973).

1. In *Commonwealth ex rel. Spriggs v. Carson, supra,* a plurality of the Supreme Court expressed the opinion that the "tender years presumption" is "offensive to the concept of the equality of the sexes which we have embraced as a constitutional principle within this jurisdiction. *See* Pa. Const., art. I, (1974); *Conway v. Dana,* 456 Pa. 536, 318 A.2d 324 (1974)." *Id.* 470 Pa. at 300, 368 A.2d at 639. However, when the hearing was held in this case, *Spriggs* had not yet been decided. Furthermore, although it is desirable that this important issue be resolved expeditiously, the constitutionality of the "tender years presumption" has not been argued on this appeal. *See Wiegand v. Wiegand,* 461 Pa. 482, 337 A.2d 256 (1975).

The mother next contends that the hearing judge did not properly evaluate the evidence.

 " 'Under both the statutory and case law, the scope of review in child custody cases is quite broad and, while we cannot nullify the fact-finding function of the hearing judge, we are not bound by a finding which has no competent evidence to support it.' " *Commonwealth ex rel. Grillo v. Shuster, supra,* 226 Pa.Super. at 235, 312 A.2d at 62, quoting *Commonwealth ex rel. Gifford v. Miller,* 213 Pa.Super. 269, 273–274, 248 A.2d 63, 66 (1968). To enable us to exercise this quite broad review, "the hearing judge should file in every custody case a comprehensive opinion reflecting a thorough analysis of the record as a whole and specifying the reasons for the ultimate decision." *Commonwealth ex rel. Grillo v. Shuster, supra,* 226 Pa.Super. at 237, 312 A.2d at 63. *And see Commonwealth ex rel. Holschuh v. Holland-Moritz,* 448 Pa. 437, 292 A.2d 380 (1972); *Gunter v. Gunter,* 240 Pa.Super. 382, 361 A.2d 307 (1976). Here the hearing judge fully complied with these requirements, and therefore, absent an abuse of discretion, his decision will not be reversed. *See In the Interest of Clouse,* 244 Pa.Super. 424, 368 A.2d 780 (1976).

The father and mother are Claire and Edna Tobias. They were married in December, 1965, separated in February, 1971, and divorced in November, 1972. Their only child, Claire, Jr., was born on August 1, 1966. The mother has three sons, triplets, from a previous marriage. Upon separation, she retained custody of the triplets and of Claire, Jr. However, in June, 1975, Claire, Jr., was visiting the father, and the father refused to return him to his mother. The father is now re-married, and his new wife, Arlene, has an eleven year old daughter by a previous marriage.

In his opinion, the hearing judge quite impartially recapitulated the testimony as follows. The mother testified that after separation the father only came to visit the children

when she called him to do so, and that the only condition she placed on these visits was that the father should not take the children to Arlene's house. The father testified that he visited the children whenever he could, about once every six weeks, but that his efforts were obstructed because he did not have the mother's unlisted telephone number, and also because she placed many limitations on his visitation rights. The mother did not contend that the father was not a fit parent. He, however, contended that she neglected Claire, Jr., was emotionally unstable, frequented bars, and generally was out of the house a lot. The mother admitted that she had been treated at a Mental Health Clinic, and was taking nerve pills and seeing a doctor for "weight and nerve" problems, but she stated that she went to bars only once or twice a month, and she denied that she neglected her children. The father testified that when he first obtained custody of Claire, Jr., the child was underweight and nervous, and that Claire, Jr. has consistently expressed his desire to stay with his father. Arlene testified that the mother had once called her to ask her to take care of the children because she couldn't "stand" them at the time, and stated that her doctor had suggested that she place the children in a foster home until her nervous condition improved. The mother denied any such conversation. Arlene also testified that Claire, Jr., had told her that he wanted to stay with his father and had expressed fear of his mother.

The hearing judge interviewed Claire, Jr., in chambers. He properly allowed counsel to be present, and had the proceedings transcribed. *Snellgrose Adoption Case,* 432 Pa. 158, 247 A.2d 596 (1968); *Commonwealth ex rel. Grillo v. Shuster, supra; Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 294 A.2d 782 (1972). In his opinion he repeated the child's stated preference to remain with his father, and the child's negative comments on his mother's behavior. The judge noted that an allowance must be made "for possible inaccuracies under the stress inherent in such a situation for one of his years.", lower court opinion at 5, and

▆▆▆▆▆▆▆▆▆▆▆▆▆

further remarked that the significance of the child's statements is not in their accuracy but in how they reveal the psychological impact of the mother's behavior on the child.

▆▆▆▆▆ The mother contends that the judge relied too heavily upon Claire, Jr.'s stated preference to live with his father, and placed too little emphasis on the policy that it is preferable for siblings to be raised together. However, while influenced by the child's preference, the judge properly considered it only one of the factors necessary to determine best interest. *See In re Russo, supra; Carlisle Appeal, supra.* The same was true of the policy of raising siblings together; the court recognized the policy, and Claire, Jr.'s, affection for his brothers, but concluded that his best interest would be met by living with his father, with frequent visits with his siblings.

The hearing judge summarized his findings as follows:

In the instant case, Junior has expressed a very decided preference to live with his father. He is devoted to him and they have established a fine rapport with each other. Arlene impresses us as a wholesome person who in raising her own daughter, two years older than Junior, has come to know the needs of growing children and fulfills them. She has demonstrated an understanding, concern and affection for him and he has reciprocated. It is a well rounded and well adjusted family, consisting of father, mother, and sibling figures, spending their evenings together, sharing their recreation and otherwise looking after and supporting each other. This is in marked contrast to the alternative presented—the home of a mother who is mentally and nervously distraught, whose lack of insight and whose concern for her own personal life have resulted in the neglect and important physical and emotional needs of her boy and whose emotional imbalance affects and infects her children.

We are convinced that Junior's remaining with his father will better serve to establish his stability and

security and better promote his physical, mental and moral welfare.

Lower court opinion at 7.

■ There are facts in the record that the hearing judge does not comment upon, for example, the means by which the father first obtained custody, the fact that the father's house only has two bedrooms, and the fact that despite the father's statement that he wants to get a bigger house, the record does not establish his financial ability to purchase one. Also there are statements by the judge at the hearing that perhaps not everyone would agree with—such as his comment that although he commends the mother for seeking psychological help, her doing so must necessarily affect the child, and his statement, "I'm sorry for the boy who doesn't have a man in his home . . ." Nevertheless the judge saw the witnesses and was in a better position than we are to determine what was in Claire, Jr.'s, best interest. When a hearing judge has been careful and thorough, and has properly applied the law, we must defer to his conclusions. Thus in *Carlisle Appeal, supra,* 237 Pa.Super. at 185–186, 310 A.2d at 283, we said, quoting *Doberstein v. Doberstein,* 201 Pa.Super. 102, 106, 192 A.2d 154, 157 (1963):

We have carefully reviewed the facts in this record and are satisfied that the decision of the court below was based on the sober judgment that the best interests of these children were served by remaining with their father; and that in deciding this, the established custody guides of fitness of the parties, preference of the minors, the children of tender years policy and the policy of keeping the family together, were all carefully weighed and balanced against the paramount question of the welfare of the children.

Affirmed.