509 A.2d 338

**In re PENNY R., Nancy R., Petitioner and Natural Guardian of Dawn R., a Minor Child.**

**Appeal of NANCY R.**

Superior Court of Pennsylvania.

Submitted July 17, 1985.

Filed May 7, 1986.

Joan F. Shullo, Scranton, for appellant.

Leonard J. Frawley, Jr., Towanda, for appellee.

Before TAMILIA, JOHNSON and HOFFMAN, JJ.

TAMILIA, Judge:

This appeal presents the unusual circumstance of consensus between appellant and respondent, Donnie R., who raise identical opposition to an Order of the Court of Common Pleas of Bradford County. It is also a case of first impression with respect to application of 35 Pa.S.A. § 10185, the hearing provisions of the Protection from Abuse Act.[1]

Initiation of the protection action began conventionally with a petition filed by appellant on behalf of herself, and the parties' two daughters, one of whom is a minor. A restraining Order was issued on February 16, 1984, and after a hearing, a stipulation was entered to the effect that appellant would remain in sole custody of the minor child and the marital home, and that both parties would attend counseling sessions. The stipulation was confirmed by the Order of May 25, 1984, with the (motioned) modification that appellee would be allowed overnight visitation in the marital home on weekends. The parties complied with all provisions of the Order. On June 15, 1984, the lower court sua sponte vacated the May 25 Order thereby discontinuing home visitation indefinitely. After the appropriate intervening procedures, this appeal was lodged.

1. § 10185. **Hearings**

(a) Within ten days of the filing of a petition under this act a hearing shall be held at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. The court shall advise the defendant of his right to be represented by counsel.

(b) The court may enter such temporary orders as it deems necessary to protect the plaintiff or minor children from abuse, upon good cause shown in an ex parte proceeding. Immediate and present danger of abuse to the plaintiff or minor children shall constitute good cause for purposes of this section.

(c) If a hearing under subsection (a) is continued, the court may make or extend such temporary orders under subsection (b) as it deems necessary.

The basis for the contested Order was an unsolicited letter of May 2, 1984, which, because of administrative error, had not immediately come to the attention of either the lower court or counsel; it had been made part of the file for a dependency proceeding related to the parties' minor daughter, since juvenile authorities had requested emergency placement of the child. The author of this letter, the Director of the Mental Health Center which had at one point provided counseling services to the parties, indicated that overnight home visitation by appellee was adverse to the child's best interests. Because the dependency action would be rendered unnecessary by curtailing of appellee's home visits, the trial court felt compelled by the situation, and authorized by § 10185(b), to issue a temporary ex parte order as an emergency measure.

The requested hearing on petition by both parties to vacate the Order permitting in-home visits by the appellee, was carefully structured by all those involved, including the child advocate originally appointed for the dependency hearing, to avoid reaching the substantive matters underlying that Order by a proceeding in juvenile court on the dependency petition. The question we must address, therefore, is restricted to whether the court abused its discretion in effecting the ex parte Order without a meaningful hearing prior or subsequent to its issuance. We find that it did.

The nature of the Act has been defined by this Court in *Cipolla v. Cipolla*, 264 Pa.Super. 53, 55 n. 1, 398 A.2d 1053, 1054 n. 1 (1979):

The Protection From Abuse Act is a vanguard measure dealing with the problems of wife and child abuse.... To institute an action, the plaintiff must file a petition with the court alleging abuse by the defendant. § 10184. *If emergency relief is needed, the court may enter a temporary, ex parte order to protect the plaintiff or minor children from abuse. In any event, a hearing must be held within ten days at which time plaintiff must prove the charges. § 10185.* (Emphasis added)

■ It requires no quantum leap in logic to conclude that if the alleged victim is required to demonstrate that abuse has in fact occurred, then a third party, in advancing the same accusations, must, at the very least, bear the same burden.

■ To meet the special exigencies of abuse cases, acceptable procedures have been fashioned which suspend, temporarily, the due process rights of the alleged abuser and providing for summary procedures for implementation of orders. *See Eichenlaub v. Eichenlaub,* 340 Pa.Super. 552, 490 A.2d 918 (1985). But continued suspension, irrespective of motivating factors, cannot be countenanced without judicial limits, subject to substantive or procedural restraint. However well intentioned the court may have been in its response to the letter here in question, a review on the record, necessarily ex post facto, to determine the correctness of the Order, should unquestionably have been conducted. The hearing of July 11, 1984, to consider the revocation order, does not fulfill the requirement as no evidence was taken nor testimony elicited, beyond reference to the letter from the Mental Health Center, which was inadmissible. Such a record does not provide an adequate basis for appellate review, proof of the point being that we are provided only with vague innuendos as to why a restraining order on visitation was issued.

■ We, therefore, hold that in all cases in which emergency ex parte Orders are issued under the provisions of the Act, a hearing shall be held within ten days of a motion by the parties regardless of whether the Order eventuated from a petition under § 10185(a) or from some other, exigent action. The motions of June 20, 1984, and June 29, 1984 filed by Nancy R./appellant and respondent, Donnie R., respectively, qualified as a petition under § 10185(a). *See Commonwealth v. Allen,* 506 Pa. 500, 505 n. 5, 486 A.2d 363, 365 n. 5 (1984) (contempt hearing conducted pursuant to § 10185(a)). Such a hearing, of course, must contain all of the elements of due process, which, above all, requires sufficient evidence, which, by its preponderance,

will support restriction of a member of the family to his or her rights under the law.

Since in this case the parties are not adversarial, and the child advocate, and/or juvenile authorities support issuance of an order, an appropriate evidentiary proceeding with competent witnesses, called if necessary by the court, is required.

We, therefore, reverse and remand for proceedings consistent with this Opinion.

Reversed and remanded. Jurisdiction is relinquished.

## JUDGMENT

ON CONSIDERATION WHEREOF, it is now hereby ordered and adjudged by this Court that the Order of the Court of Common Pleas of Bradford County is reversed and remanded. Jurisdiction is relinquished.

JOHNSON, J., dissents.

JOHNSON, Judge, dissenting:

This appeal presents the very narrow issue of whether the trial court abused its discretion in refusing to vacate its prior order, entered under the Protection From Abuse Act,[1] whereby the limited right of visitation by the father in the home of the mother and child was withdrawn and an earlier order, entered by stipulation, was reinstated. Since our scope of review remains narrow, and since I am unable to find any abuse of discretion, I must dissent.

On February 16, 1984, Nancy R., the mother of an adult daughter, Penny, and a minor daughter, Dawn, joined with her two daughters in filing a Petition for Protective Order pursuant to the Protection From Abuse Act (PFA) against Donnie D.R., the husband-father, in the Bradford County Court of Common Pleas. The petition was signed and acknowledged by all three petitioners, including the minor daughter, Dawn.

1. Act of October 7, 1976, P.L. 1090, No. 218, as amended June 23, 1978, P.L. 513, No. 81, § 1, 35 P.S. § 10181 *et seq.*

The petition alleged that, on February 12, 1984, the defendant father had worked himself into a rage concerning his older daughter, Penny, and had gone into the backyard of the family residence with a shotgun, threatening to kill himself. After discharging the shotgun, he was disarmed by various relatives of the family, and he quieted down somewhat. As a result, on February 14, 1984, a separate petition was filed pursuant to Section 302 of the Mental Health Procedures Act[2] against the father. He was taken by the State Police to Clarks Summit State Hospital, where he remained at the time the PFA petition was filed.

The PFA petition further alleged that, on February 14, 1984, the mother had learned for the first time that her husband had had "repeated and continuous sexual contact" with their daughters, Penny and Dawn, as recently as January 30, 1984. The petition alleged that the sexual abuse had been "ongoing for more than one year and consisted of various types of sexual contact including intercourse." The petition alleged that all three petitioners were in fear for their physical safety and continued emotional harm and requested the court to enter an order restraining the husband-father from all contact with petitioners, with custody of the children to be placed in the petitioner-mother.

A temporary protective order was entered by the court on February 16, 1984 and a hearing was scheduled for February 24th. Upon motion of petitioner's counsel, that hearing date was continued to March 15th. On that latter date, the trial court approved a stipulation which had been executed by all three petitioners, including the minor daughter, the defendant/father-husband, and respective counsel.

The March 15th stipulation, made an order of court by the hearing judge, provided that:

1. Defendant would refrain from causing or attempting to cause bodily injury to the petitioners and would refrain from placing them in fear of such injury; and

2. Act of July 9, 1976, P.L. 817, No. 143, § 101 *et seq.*, 50 P.S. § 7101 *et seq.*

2. Petitioner [sic] was given exclusive possession of the family residence in New Albany; and

3. The parties agreed to seek such counseling as "MH/MR Services deem necessary and appropriate"; and

4. Visitation between defendant and his children would take place as MH/MR counseling service deemed appropriate.

From the record, it would appear that both the father and the mother underwent counseling at the Mental Health/Mental Retardation (MH/MR) Center pursuant to the stipulation. Sometime in late March or early April 1984, defendant was referred to one Edward C. Hook by his MH/MR counselor, Louise Carver. Defendant testified that he had ceased to obtain MH/MR counseling since Carver "felt that we wasn't [sic] accomplishing anything and that [defendant] wanted a different type of counseling." N.T., July 11, 1984, at 9.

On May 25, 1984, the court entered a replacement order, which had been submitted by counsel for defendant. Submitted with the proposed order was the motion of defendant requesting an amendment to the March 15th order to permit a change of counselors and in-home visitation by defendant at such times and places and under such circumstances as Edward C. Hook, defendant's successor counselor, deemed appropriate. The proposed order of court and accompanying motion were submitted along with the separate "Stipulation" of Nancy R., petitioner/mother, and her counsel of record. Neither Penny R. nor Dawn R., the daughters, joined in the request for the proposed amendment, although they both were parties to the action and had previously joined in both the initial Petition for Protective Order and the Stipulation approved and filed as an Order of Court on March 16, 1984 [dated March 15, 1984].

Although the motion requesting the amended order specifically referred to short term visitation from Friday through Sunday on the part of the defendant, the provisions of the order submitted to, and signed by, the court differed from the original March 15th order only in transferring

counseling responsibilities from MH/MR to Edward C. Hook and placing in Hook the discretion as to visitation between defendant and his family. The May 25th order contains only the signature of the hearing judge, whereas the earlier March 25th stipulation contains the signatures of all parties and their respective counsel at the end of the stipulation and above the signature of the court converting the stipulation into an order of court. In all other material respects, the order of March 15th and the order of May 25th are identical.

Against this procedural and factual background, the trial court entered its order of June 15, 1984 which (a) vacated the order of May 25th, (b) reinstated the order of March 15th, exclusive of that paragraph requiring counseling and placing visitation discretion with MH/MR, and (c) indicated the court's intention to deny the request for emergency placement of Dawn R., the minor child, in a separate juvenile proceeding in the same court of common pleas. The June 15th order made clear that the court had before it a petition docketed at No. 2870 J.C. 1984 filed by the Bradford County Children and Youth Services (C.Y.S.). The juvenile petition prayed for the immediate removal of Dawn R. from the home of her mother, Nancy R.

In presenting the juvenile petition, C.Y.S. indicated that emergency placement would be rendered unnecessary if the visitation authorized by the court's order of May 25th was terminated. Included in the court's June 15th order was its declaration that it had before it a letter dated May 2, 1984 from the Director of the MH/MR Base Service Unit indicating that home visitation by the father to the home of the mother and minor child would be adverse to the best interests of the child. The court, in vacating the May 25th order and reinstating the March 15th order, made it clear that the court would not, on May 25th, have permitted any modification of the March 15th order, had the court been aware, at that time, of the contents of the letter from the Director of the Base Service Unit.

On June 20, 1984, a Motion to Vacate Order Modifying Modification of Petition for Protection from Abuse was filed on behalf of Nancy R. and Penny R. by counsel of record for petitioners. No reference is made in the motion—apart from the caption—to Dawn R., the minor child. Nine days later, a Petition to Vacate Order was filed on behalf of Donnie D.R., defendant in the original action. Again no reference, other than in the caption, is made to Dawn R., the minor. A hearing on both petitions was set for July 11, 1984.

At the hearing held to consider whether the June 25th order should be vacated, the trial court had before it its order of June 25th, the motion to vacate of Nancy R. and Penny R., and the petition to vacate of Donnie D.R. As set forth above, the order under attack set forth on its face the reasons why it had been entered, namely, the pending emergency placement petition of C.Y.S. and the belated awareness by the court of the May 2nd letter from MH/MR, both of which brought into question the best interests of the minor child, Dawn R. Counsel for both the mother and adult daughter, on the one hand, and for the father, on the other, had received copies of the June 25th order prior to filing their respective pleadings which sought to have that order vacated.

The motion to vacate filed on behalf of Nancy R. and Penny R. merely raised two "notice" points: (1) the parties did not have prior notice of the entry of the order and (2) the parties had no notice regarding any information from the Director of the MH/MR Base Service Unit, nor had the parties ever been seen by said Director.

The petition to vacate filed on behalf of Donnie D.R. similarly alleged lack of notice prior to the entry of the order, but went on to allege the unconstitutionality of the June 25th order under both the federal and state constitutions, alleged the lack of authority in the Director of the Base Service Unit to communicate with the court, and alleged that the letter from the Director violated the civil rights of the parties.

Neither pleading contained any allegations regarding the emergency placement petition filed at No. 2870 J.C. 1984 on behalf of Dawn R. or the claim by the Director of the MH/MR Base Service Unit that visitation by Donnie D.R. with Dawn R. would be adverse to the best interests of that minor.

It should be noted that at the hearing held on July 11, 1984, for the first time Dawn R. was represented by separate counsel, namely the attorney representing the minor in the separate dependency proceeding.

Following the hearing, the trial court entered its order of July 17, 1984 which merely denied the request that the June 15th order be vacated, and Nancy R. brought the present appeal from that order.[3]

Nancy R., Appellant, presents two questions on this appeal:

1. Did the trial court err in taking into consideration hearsay as a basis for modifying its Order? and

2. Did the trial court err in failing to schedule a hearing before or after modifying its Order?

Since I find no merit in either of these contentions, I would affirm and must therefore dissent.

Turning to the second issue first, Appellant contends that failure of the trial court to *order* a hearing for the purpose of determining whether or not the court should vacate its prior order was error.

The Protection From Abuse Act provides, in pertinent part, in Section 5 thereof:

3. We note that, on July 30, 1984, counsel for Donnie D.R. filed exceptions to the order of July 17, 1984. On July 31st, a hearing on the exceptions was set for August 29th. However, the filing of the notice of appeal by Nancy R. on August 2nd operated to render further action on the exceptions moot. We further note that the only brief submitted to this court is that filed by counsel for Nancy R. Counsel for Donnie D.R. indicated, by letter, his lack of intention to file a brief, asserting that Donnie D.R.'s position "is identical to the position of Don R[.]." [sic]. Counsel for Dawn R., the minor, also filed notice that no brief would be filed by him.

## § 10185. Hearings

(a) Within ten days of the filing of a petition under this act a hearing shall be held at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. . . .

(b) The court may enter such temporary orders as it deems necessary to protect the plaintiff or minor children from abuse, upon good cause shown in an ex parte proceeding. Immediate and present danger of abuse to the plaintiff or minor children shall constitute good cause for purposes of this section.

35 P.S. § 10185(a) and (b).

In the present case, the need for a hearing within ten days of the filing of the original PFA petition was rendered unnecessary when the defendant, Donnie D.R., along with his counsel, entered into a stipulation on March 15, 1984 which granted to the petitioners virtually everything that had been requested in the original pleading. While the stipulation is silent as to the averments concerning the sexual abuse of Penny R. and Dawn R. by Donnie D.R. as set forth in the original petition, one can fairly assume that the family situation was such that all parties agreed that intervention by the common pleas court was both necessary and appropriate.

There is no merit in Appellant's contention that the trial court committed error by failing to schedule a hearing *before* entering the May 25th order. At the time the order was entered, the court had before it these factors:

A. An original PFA petition which alleged (1) the dangerous use of a shotgun by Donnie D.R., (2) his temporary, involuntary commitment to a state hospital under the Mental Health Procedures Act, and (3) the sexual abuse of both Penny R. and Dawn R., a minor.

B. A petition brought by the Bradford County Children and Youth Services requesting the immediate *removal* of Dawn R. from the family residence, based upon that agency's perception as to the best interests of the minor child.

C. A letter dated May 2, 1984 from the Director of the County MH/MR Base Service Unit declaring that visitation by the defendant, Donnie D.R., would not be in the best interests of the minor child.

Under Section 5 of the Act, 35 P.S. § 10185, the court has the power, if not the obligation, to enter such temporary orders as it deems necessary to protect minor children from abuse. As the trial court pointed out in its Opinion filed February 6, 1985, its finding—that the letter from the Director of the MH/MR Base Service Unit indicated that the child would be adversely affected by the visitation of her father—warranted its revocation of an order that would not have been entered had the court been timely aware of the letter's contents.

I am at a loss in perceiving Appellant's argument regarding the need for the court to schedule a hearing *after* the June 15th order was entered. In fact, both Appellant and her spouse, the defendant, sought and were granted a hearing date of July 11, 1984. For reasons known only to the parties, they elected to limit their pleadings to the issue of whether the order was improperly entered since it was without prior notice to the parties.

They did not seek to subpoena the MH/MR Director, nor did they include any allegations in either pleading intended to place new, or additional, facts before the court on the issue of the continuing need for protection from abuse or the best interests of the minor child. As set forth above, the court was clearly within its power in entering the June 15th order. The result of that order was that the parties continued to have all of the protection afforded under either of the two previous stipulations, with the exception that the interests of the minor child were being considered in removing the right of visitation which would have been authorized upon the exercise of discretion by Edward C. Hook.

The entire thrust of Appellant's attack at the hearing seeking to have the June 15th order vacated was that it had been entered without notice to Appellant. Given the factors confronting the court on June 15, and given the clear language of 35 P.S. § 10185(b), no notice was required.

Where, as here, the only attack upon the order was that Appellant was not permitted to appear and present evidence *before* its entry, and where Appellant elects to structure her pleading leading up to the subsequent hearing so as to avoid reaching the merits of the matters before the court, I cannot say that the trial court's refusal to vacate the June 15th order constitutes any abuse of discretion.

Appellant's first issue is equally without merit. Appellant attacks the right of the court to rely, in part, upon the letter from the MH/MR Director as a basis for vacating its earlier order. Appellant has not argued, and I believe could not argue, that the trial court would have been without power to take the minor child into custody based upon the dependency petition then pending in the court. See 42 Pa.C.S. §§ 6324, 6325, 6327(e), 6334. By choosing a less restrictive alternative, namely, the removal of discretion in a family therapist, Edward C. Hook, to permit visitation by the father, while leaving the remaining provisions of the PFA stipulated order intact, the court exercised exceedingly sound discretion, in my view.

No parental agreement can permanently determine the custody of children. The best interests of the child determine custody, and a court with proper jurisdiction has power to re-determine those best interests where circumstances change. *Hattoum v. Hattoum*, 295 Pa.Super. 169, 178, 441 A.2d 403, 407 (1982), *citing Commonwealth ex rel. Viehdeffer v. Viehdeffer*, 235 Pa.Super. 447, 344 A.2d 613 (1975) *and Commonwealth ex rel. Heller v. Yellin*, 174 Pa.Super. 292, 101 A.2d 452 (1953). This, of course, is not a custody case. But it can be said with equal force that once the parties have placed the issue of the best interests of a child before the court under the Protection From Abuse Act, no subsequent parental agreement can permanently determine when, and under what circumstances, parental visitation shall occur.

Appellant does not question the authority of the court to refuse to approve stipulation or consent agreements in Protection From Abuse actions. Brief for Appellant, at 10. Yet Appellant would urge us to reverse an order which did

nothing more than declare that the May 25th stipulation would have been refused, had the court had access to material information which was within the court's files at the time the May 25th order had been entered, but incorrectly docketed to the juvenile file rather than the file involving protection of the minor from abuse.

I find nothing in Appellant's brief dealing with the prejudice or harm done to the minor, Dawn R., by virtue of the court's withdrawing visitation while leaving the minor in the home with her mother and sister. Nor does the record contain any suggestion that Appellant would have been prevented from placing before the court, in accordance with proper pleadings, any evidence or testimony to support the reinstatement of properly supervised home visitation.

Finally, I note that, in accordance with the Act, both the March 15th order and the May 25th order were to remain in effect only until February 15, 1985. *See* 35 P.S. § 10186(b).

I can find no abuse of discretion in the trial court's refusal to vacate its order of June 15, 1984. The order properly took into account the best interests of the minor child, Dawn R. and did not foreclose further action by either the original petitioner, Nancy R., or the defendant, Donnie D.R.

Accordingly, I dissent.